EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>**451-2023-02095** |
|---|---|---|

**Texas Workforce Commission Civil Rights Division** and EEOC
*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Mr. Juan Garcia | (512)-789-5122 | 06/10/1968 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2813 Gettysburg Dr. | Austin, TX 78745 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| The University of Texas at Austin | 500+ | (512)- 471- 3434 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1601 Trinity St. | Austin, TX 78712 |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
|  |  |  |

| Street Address | City, State and ZIP Code |
|---|---|
|  |  |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 2022-11-22   Latest: 2022-11-22

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**See attached EEOC narrative for the employment discrimination complaint of Juan Garcia.**

---

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 2023-03-15          *[signature]*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**EEOC NARRATIVE FOR THE EMPLOYMENT DISCRIMINATION COMPLAINT OF JUAN GARCIA**

From November 11, 2022, through the present (as recently as March 17, 2023), The University of Texas at Austin, (or "UT Austin") engaged in an ongoing pattern of discrimination towards Mr. Juan Garcia ("Mr. Garcia") based on sex (Male). The relevant facts and information supporting his substantive claims are as follows:

1. Mr. Garcia began his employment with UT Austin in February 2004 as Director of Development Strategy and Analytics where he led the overhaul of the university's annual giving program, data warehouse initiatives, and predictive analytics models to increase donor revenue. Within two (2) years, Mr. Garcia was promoted to Executive Director of Development Information Services overseeing all alumni and donor relationship database operations. In this role, Mr. Garcia led modernization initiatives to optimize processes and procedures for receiving gifts, managing legacy systems, and conducting campaign analysis and forecasting for the Campaign for Texas. In January 2008, Mr. Garcia was promoted to Assistant Vice President for Development. In this role, Mr. Garcia led the implementation of an effective prospect development strategy yielding a 37% growth in donor revenue.

2. Continuing his meteoric rise, Mr. Garcia was appointed Chief Strategy and Analytics officer for the Texas Athletics department in November 2014 where he led business strategy to improve operational efficiencies, analytics and reporting, fan experience projects including the Cotton Bowl, and increases in the Longhorn Foundation philanthropic contributions. Mr. Garcia's record of distinguished service to UT Austin would continue when he was again appointed to Assistant Vice President for Advancement Strategy and Campaign Director, Texas Development. Here, Mr. Garcia led a team of 120 employees and was an architect for the What Starts Here campaign, helping to transform the university into a leading advancement organization in public higher education.

3. Throughout his tenure at UT Austin, Mr. Garcia maintained stellar performance and did not suffer any disciplinary issues. In 2015, Mr. Garcia became a member of the Texas Athletics CATAPULT training program. In 2019, Mr. Garcia received a Go Bigger Award for Outstanding Performance for his campaign leadership. In 2021, Mr. Garcia was selected to participate in the Advancement Leadership Lab leadership program representing UT Austin alongside other premier public institutions.

4. Mr. Garcia consistently surpassed expectations in his performance evaluations and received commendation from his superiors. In fact, during Mr. Garcia's 2021 evaluation, Scott Rabenold, Vice President of Texas Development stated: "He's done some incredible work – and he's growing as a leader. We would not be having the success we are having without his efforts…In particular, I want to call out Juan's growth as a leader this year. It hasn't always been easy, but he has dealt with tough situations and learned [through] those experiences…"

**EEOC NARRATIVE FOR THE EMPLOYMENT DISCRIMINATION COMPLAINT OF JUAN GARCIA**

5. Mr. Garcia was devoted to his job and making those around him better helping to grow the organization from a $300M to a $700M a year fundraising organization. Mr. Garcia had high hopes of continuing to excel at his position to help to lead the alumni and donor relationship database replacement project and help to grow the organization into a $1B a year fundraising organization.

6. On March 2, 2022, and April 5, 2022, Mr. Garcia received notices of a formal complaint alleging that he engaged in unprofessional conduct against Amanda Bartelt, Katie Cook, and Cassandra Bernhardt in violation of university policy HOP 3-3031 Track C, the lowest level of violations. These notices were the first time that Mr. Garcia learned of these allegations. The alleged conduct described in the complaints purportedly occurred over the span of several years dating as far back as 2009, 2014-2017, and 2020. However, during this period of 13 years, no third-party privy to this information reported any instances of experiencing or observing Mr. Garcia engaging in sexual harassment.

7. During the investigations, Mr. Garcia fully cooperated by providing relevant evidence regarding the credibility of several witnesses and affirmative rebuttals to the allegations. Mr. Garcia was acquitted of engaging in sexual harassment quid pro quo and acquitted of engaging in sexual harassment creating a hostile work environment under university policy. However, the allegations against Mr. Garcia were based on the grounds of unprofessional or inappropriate conduct of a sexual nature.

8. Despite Mr. Garcia's stellar performance as Assistant Vice President and lack of workplace infractions or allegations up to this point, Mr. Garcia was wrongfully terminated from his position as Assistant Vice President for Advancement Strategy and Campaign Director at The University of Texas at Austin on November 21, 2022.

9. The decision to terminate Mr. Garcia was based on a series of fundamentally flawed investigations riddled with inconsistencies which should have cast doubt upon the veracity of the witness statements throughout the investigative process. The evidence used to substantiate the findings against Mr. Garcia consists mainly of third-party statements, as indicated by the testifying witnesses repeating what they heard from other coworkers rather than supplying credible, firsthand knowledge. For example, one witness stated she "vaguely heard through the grapevine" that Mr. Garcia committed the alleged conduct.

10. Throughout each investigation, many witnesses reported never having observed Mr. Garcia engaging in the alleged misconduct, could not remember names or identify specific individuals who were allegedly subjected to Mr. Garcia's conduct. Moreover, some witnesses could not recall whether they heard of the alleged conduct or were told that multiple women experienced the alleged conduct.

**EEOC NARRATIVE FOR THE EMPLOYMENT DISCRIMINATION COMPLAINT OF JUAN GARCIA**

11. Notably, UT Austin's own investigations revealed that Amanda Bartelt was found to have engaged in the same unprofessional conduct of a sexual nature that was the basis for Mr. Garcia's termination. The investigation concluded that from 2015-2017, Mr. Garcia and Ms. Bartelt exchanged numerous flirtatious Facebook messages.

12. However, following this discovery, UT Austin failed to take fair and impartial remedial action, and opted to hold Mr. Garcia singularly responsible and not Amanda Bartelt. Thus, to terminate Mr. Garcia without similarly proposing disciplinary action for other employees who committed the same infraction subjects Mr. Garcia to a disparate penalty because he was treated differently than a similarly situated employee of a different sex.

13. Mr. Garcia feels that he has been subjected to unlawful discrimination on the basis of sex because the investigation found that Ms. Bartelt failed to observe the boundaries of a supervisor/subordinate relationship and engaged in conduct of a sexual nature that is unprofessional, inappropriate, and prohibited under university policy by exchanging hundreds of flirtatious and sexually suggestive messages with Mr. Garcia, therefore producing a comparable violation history, for which Mr. Garcia was terminated and Ms. Bartelt granted leniency. UT Austin has not provided Mr. Garcia with any information regarding whether Ms. Bartelt was disciplined at all for violation of university policy.

14. Mr. Garcia has been subjected to unlawful discrimination on the basis of sex because UT Austin's procedurally deficient investigations and adjudication of Mr. Garcia's alleged "unprofessional conduct" was inherently biased as evidenced by the complainant statements, and partial discretion of the investigators in reaching conclusory findings.

15. Furthermore, the investigating authorities intentionally omitted relevant information regarding the credibility of witnesses and willfully ignored conflicting witness testimony regarding these claims. UT Austin failed to seek out potential witnesses Mr. Garcia identified as sources of information favorable to him such as Mr. Steve Hank, Ms. Teri Pierce, and Ms. Amy Folan. Moreover, UT Austin sought to minimize and explain away any reasonable inferences in Mr. Garcia's favor in order to reach improper findings of fact, further suggesting the existence of bias.

16. For example, the investigations intentionally manipulated two witness statements alleging Mr. Garcia "cornered" women despite neither woman using such word to describe the interaction in their statements. Moreover, in a blatant display of bias, the investigators boldly claim that Mr. Garcia "earned" himself a disparaging nickname, "Juan My Eyes Are Up Here Garcia." On at least one occasion, the investigation purportedly supported its findings based on a witness stating Mr. Garcia's "presence" made her "uncomfortable." In other words, Mr. Garcia was found in violation of university policy because his existence as a male made others uncomfortable.

**EEOC NARRATIVE FOR THE EMPLOYMENT DISCRIMINATION COMPLAINT OF JUAN GARCIA**

17. Mr. Garcia feels that he has been subjected to unlawful discrimination on the basis of sex and that UT Austin used unprofessional conduct as a proxy to justify their discriminatory actions. UT policy states, "The University will consider termination for faculty or staff, the presumptively appropriate discipline for a finding of responsibility, for the following Prohibited Conduct: (1) Sexual Assault, (2) Interpersonal Violence (3) Stalking, and (4) Sexual Harassment. This presumption may be rebutted or confirmed, in the disciplinary authority's discretion, by one or more mitigating or aggravating factors in order to reach a just and appropriate resolution in each case." *See* HOP 3-3031.

18. Importantly, none of the alleged conduct regarding Mr. Garcia amounts to any of the four criteria warranting termination. UT Austin provided no evidence that Mr. Garcia sexually harassed any of the complainants because he was acquitted of both types of sexual harassment claims as defined by university policy and concluded in the investigation findings. Further, unprofessional conduct of a sexual nature does not give rise to an automatic termination because it is not listed as conduct eligible for such sanction, and it is the lowest level of violations listed in the policy. Thus, Mr. Garcia's alleged "unprofessional conduct" was distorted in such a manner as to justify his termination under sexual harassment, further suggestive of bias and discrimination.

19. Mr. Garcia has been subjected to discrimination on the basis of sex. Mr. Garcia asserts that he has been subjected to disparate treatment due to his sex, in violation of Title VII of the 1964 Civil Rights Act as Amended. Mr. Garcia also asserts that the findings of this investigation are a result of an erroneous outcome as shown by the multiple examples of impropriety and bias in violation of the above-mentioned statute.

20. Please include this summary of Mr. Garcia's claims with his complaint and keep me informed of all further developments in this case. If you have any questions regarding this matter, please do not hesitate to contact us. Your attention to this matter is appreciated.

Sincerely,

*Michael C. Fallings*

Michael Fallings, Esq.
MANAGING PARTNER
PH: (512) 225-2822
mfallings@fedattorney.com

Aderius Ross, Esq
Associate
PH: (512)-225-2805
aross@tullylegal.com